318-0079, P.J.P.C. is the only way. It's been identified as Justin Nicolosi v. Robert Markham, actually, in 1990. Mr. McPherson. Good morning, Your Honors. I'm here to support the counsel. Your Honors, this case stems from the granting of a motion to dismiss filed by an independent. He was charged below with unlawful possession of a controlled substance, a heroin. He filed a motion to dismiss under 720-ILCS 570-414. Basically, it summarizes that by saying that the statute says that a person who has experienced an overdose shall not be prosecuted, that the evidence in question was acquired as a result of the person seeking or obtaining emergency medical assistance. That was the basis for the defendant's motion to dismiss. The parties actually stipulated to the facts that were presented at this motion, and they are obviously undisputed, and they are fairly straightforward. The defendant was experiencing an overdose. His female friend called 911, and the Tassel County Sheriff survived. The defendant was not responsive. He was not breathing. The deputies provided assistance, and he became responsive and became able to breathe on his own. During that assistance, one of the deputies observed a syringe paraphernalia on a table next to the TV in the vicinity of where the defendant was. That's kind of the side. And so the defendant became responsive, wasn't breathing, and as he was being prepared to be taken to the hospital, he requested his wallet and keys from the closet. Deputy McKinney retrieved those items and found a rolled-up dollar bill sticking out of the wallet. Inside that dollar bill was a gum wrapper with a grayish-white substance that field-tested positive for heroin. That was the heroin that the defendant was charged with possessing in this case. The defendant filed his motion. The court has argued, basically presenting the same arguments that we've made here on appeal that we'll get into, of course, and the trial court granted that motion, finding that the dollar bill and heroin within it was found as a result of the treatment that the defendant was experiencing and undergoing. On appeal, the state argues that the heroin, in question, was not found as a result of emergency medical assistance. People submit that at the time heroin was found in the closet, the emergency treatment had ended. There's no question that deputies were called to this residence to provide emergency medical assistance and that they did provide such assistance. There's no question about that. But the state is submitting that there was an intervening event that basically signaled the end of this, quote, emergency medical assistance end, quote, and led to something different that enabled this evidence to be the basis for a criminal charge. The people submit that there's basically two pieces of evidence in this case and they're both handled very differently by the prosecution and those differences highlight the people's position today. The first piece of evidence was that syringe that was found on the table. The defendant was not prosecuted for possession of that syringe because that was clearly found during, in the midst of this emergency medical assistance. It was in plain view, it was clearly the law enforcement found this item. That clearly falls under 570-414. That's why the defendant wasn't prosecuted for that item. But the fact that he that the fact that he became alert, became conscious, became able to breathe on his own and that the people would submit draws a line between what happened before and what happened after. There's not a lot of case law on this topic but the state submits that there needs to be a line drawn. Where does the emergency medical assistance end? It has to end at some point. The state submits that the fact that he was able to on his own breath and his own mind be able to ask for his keys and his wallet shows that there's no more of a need for emergency medical assistance. During that, is there currently no cop to meet him? Sure. Yes. Your Honor, the state submits that just because they're taking him into the ambulance does not mean that he was still under an emergency situation. I think that work needs to be handled with some care. It seems to be very narrow. No. The word emergency. Very narrow. I don't know if that's very narrow, Your Honor. I think when he was turning purple as his female companion said, I think at that point there was certainly a need for, you know, that's definitely an emergency. He couldn't breathe on his own. He wasn't conscious. I think we would all understand that that's an emergency. But after you bring your consciousness and you're able to breathe and you're even asking questions about unimportant things like keys and wallet, I think the emergency has ended and that's what we are below and that's what we're doing at this point. You said there wasn't a lot of case law on this issue. Is this a case of first impression? As far as you know. I think in regards to these particular facts, yes, there is that case of Tepper from the 2nd District that we argued. That's a little different. The officers arrived to a woman smoking over her car and They were not called to a medical emergency. No, no. It was more of a traffic stop. They saw the drugs and the paraphernalia in the car. Based on that proposition and the paraphernalia of the drugs, that there was probably an overdose. The court said that 414 doesn't apply to that because the evidence was found before they realized there was an overdose and the treatment was necessary. In this case, it was found after the medical emergency. That's why I argue in my case that in Tepper, the evidence was found before any emergency medical treatment. In this case, it was found after. The state doesn't seem like there should be that much of a difference. At some point, a medical emergency has to begin and end. Clearly, in Tepper, the evidence found before the medical emergency was admissible. The state argues that after the emergency medical assistance ended, that the evidence found after that should be admissible too. That's our argument in this case. Mr. Nicholson, assuming for the moment the validity of your emergency argument, what was the authority for the police to unroll the dollar bill? Um... I don't know, Your Honor. I don't think that was an issue on appeal. So, I mean, I wasn't ready to remove it. The fact of the matter is that wasn't an issue that the defendant argued below. So, I don't know whether it was an issue here or not. With that, the state would simply argue that this heroin was not found as a result of emergency medical assistance. Therefore, the limited immunity provision of 570 slash 414 is not applied. And this, the trial that we shared brings me to my next point. Thank you. Thank you. Thank you, Mr. Nicholson. Mr. Lemke. Thank you, Your Honor. Good morning. My name is Matthew Lemke. I work for the Office of the State Public Defender. Excuse me. I represent Robert Martin in this cause. I will jump straight into argument. My opposing counsel has stated the facts and we agree. There is no dispute as to the facts that he mentioned. I would like to start with the emergency argument that was alluded to. First, I will argue that there is no basis in the evidence to conclude the emergency was over in this case. There was no testimony in this case. All of the facts were part of the stipulated record. And certainly, the state offered no evidence in that stipulated record that a medical expert said medical attention was no longer an urgent or emergency issue. I don't think there is any evidence to support that claim. In fact, the evidence, I think, supports an opposite conclusion. As you mentioned, there was an ambulance involved in this case that took my client to the hospital. I think it would be very unusual for emergency medical care professionals to take a man who was unconscious and not breathing to the hospital in an ambulance if it wasn't an emergency. I think just the fact that there are not unlimited ambulances in the world that he used limits of resource to go straight to the hospital. I think the fact that he went to the hospital is also telling in this case. The emergency crew could have recommended that Mr. Markham make an appointment with his local practitioner or his local clinic, but instead they I think that those two facts, that he was taken in an ambulance by EMTs and taken to the hospital underlies any claim, while unsupported, that the emergency had ended. I don't think the court I don't think that's necessarily a relevant inquiry to analyze this case. The rule proposed by the state in this case that if emergency care is over, that immunity is no longer appropriate, I think is atextual. I don't see any basis for that rule in the statute. The statute doesn't provide any rule as there's a beginning or an end of emergency care. The statute doesn't provide for there to be has to be discovered in plain view as Mr. Nicolosi alluded to. There's no mention of that at all. In fact, the bright line that the state is advocating for already exists in the statute. The bright line was put in there by the legislature with the language as a result of it. That language is not as the court well knows, that language is not fresh or new to this statute. That language has a storied history in several areas of the law, and that's a causation analysis. And there are countless cases that this very court has analyzed that use that language in a causation analysis. So while there are no cases I do agree with my opposing counsel that this may be a case of first impression. I think that we do have authority to look to because of this commonly used language as a result of it. And the case that I cited in my opening brief, the Herman case, I think is a perfect analog for this case. In that case, the defendant was charged with an aggravated form of arson and in order to be proved guilty of that offense, the defendant had to have a fireman had to have been injured as a result of the fire or explosion caused by the defendant. And in that case, the fireman was injured after fire. And the defendant used as a defense that while the fireman was injured in his official duty after fire, he was misusing the ladder at the time. And that, the defendant argued, was an intervening event that kind of interrupted this chain of events or interrupted a chain of foreseeable events. And the first district court, I believe, rejected that argument because while the fire department, while the fireman was misusing that ladder, that in itself did not break that cause of offense. So the court ultimately held that long in their brief that while the misuse of that ladder did occur, it was the fire that the defendant started that kind of started that chain of events. And certainly the misuse of that ladder was a foreseeable event. In this case, I think it is more than safe to say that Mr. Markham asking for his wallet, which likely contained his identification, potential medical records, emergency contacts of family members, very important information that could be beneficial to emergency care providers at the hospital. Him asking for that is a perfectly reasonable... And also contentious error. And also contentious error. Yes. So I think that having said that, I think that it's a perfectly understandable thing for that to occur. And it was in furtherance of the care. Mr. Ancalosi argued that there has to be set a delineation of when an initiative applied, but the statute doesn't say that it has to happen during actual emergency care. That is a textual reading of the statute. The statute says obtained as a result of obtaining or seeking. And certainly over the course of this entire incident, Mr. Markham was obtaining care. He was obtaining medical care in the private residence, and that was the sole reason that emergency technicians were there. He was receiving care as he was being loaded and prepared to be taken to the hospital, and certainly he received that at the hospital. Mr. Lemke, does the phrase or could the phrase, as a result of, comprehend the fact that the police officers were even there? They would not have been there but for the emergency. Could that fall within as a result of? I believe so, Your Honor. Certainly they had no reason to be there otherwise, and that was their first initial, based on the stipulated facts, that was their first initial call. They were the actual first responders in this case. What happened in this case was that, a little bit more than I mentioned previously, is that officers, I believe, were the first to arrive in this case. They were the initial emergency providers. They administered Narcan to Mr. Markham. He did not respond to that initial response. Eventually later, emergency professionals, paramedics arrived to assist the officers, and they provided additional doses of Narcan, which eventually took hold. Certainly, when the officers arrived, it was under the guise of providing medical care, not investigatory work. So are you aware of any case law that would prevent that kind of analysis under the as a result of clause? Preventive analysis that officers arrived, that the officers would not have been there but for the emergency? I'm not aware of any case law directly on the point in that particular issue, but I will note the Herman case that I cited, Your Honor. The fire department certainly would not have been there at that fire had it not been for the original act that the defendant was accused of in this case. Mr. Mumke, let me just give you an example. If we construe the statute narrowly, as Mr. Nicolosi would like us to do, what would prevent a police officer from stepping away as the paramedics attended to the victim, or a person going through the overdose, having a police officer step away while the paramedics are rendering aid, and then open a drawer in the nightstand or open a dresser drawer across the room? Could you address the slippery slope that could arise if we do construe the statute narrowly? Absolutely, Your Honor. And I'm glad that you asked that question. I do think that engaging in a narrow interpretation in this case would probably guarantee further cases that this court would have to engage in an ad hoc analysis, that each case would have to be very fact-dependent, and I think it would undermine the policy and purpose of the statute. Would it allow the officers to linger after the ambulance pulled away? I certainly don't think that would be supported under your first hypothetical or your second one. I do expect there would be Fourth Amendment concerns in that analysis, but for this point of the statute, I don't think that certainly that kind of conduct should not be allowed to stand and that that evidence would be admissible. And I think that there are a great horrible effect that would result from a narrow interpretation in this case. I think if the facts were slightly different and Mr. Markham had regained consciousness and after he regained consciousness before taking to the hospital, maybe drugs fell out of his pocket, just inadvertently. No act of his own. I think that we'd be in a similar situation under the state's interpretation, but I think that would be highly problematic and undermine the statute. I think that if Mr. Markham was at the hospital and he had his wallet and had the officer not searched his wallet, like in this case, if he had been at the hospital and he had his wallet and someone asked for his insurance or something like that, I think it would be highly problematic if they found drugs at the hospital in this narrow interpretation. Thankfully, those are not the facts of this case. The facts of this case are well defined. That is correct, Your Honor, but I do think that having ruling for the state's narrow interpretation in this case would open the door to those unfortunate scenarios. So I do take the court's concern of that hypothetical. I will say that the purpose of this statute, as I'm sure the court will know by now, is to save lives. And I think that prior to the statute, I apologize. I think the purpose of the statute would be severely undermined if a narrow interpretation is upheld in this case. Prior to the statute, those who struggle with drug abuse and those family members and friends and those who struggle with drug abuse would have to struggle with whether to call for help when moments matter, when it's a situation of life or death. And they'd have to worry, do I want to put my loved one in a position where they could go to jail for a long time in order to help them? And not everyone would make the same decision on that. It's a decision where moments matter, where every minute matters. And in this case, Mr. Markham was fortunate. Certainly, he turned purple, he lost consciousness, and under very great circumstances, the statute was enacted to avoid that difficult decision, to make it much easier for those who are vulnerable to this issue. If this narrow interpretation is adopted in this case, it will undermine the entire statute. In order for the statute to work, people must understand and feel safe about it. Everyone has to believe that they will be covered by the statute in order for the statute to work at all. And if those members of our community who are vulnerable and whom the statute was enacted for don't feel that way, it will be undermined in its entirety because it's not worth the risk, and it will be like going back to before the statute in its entirety. And I think that at this point, because there is no authority to stand for the atextual extra rules that the state is actually asking for in this court, I don't think that I think because the fact support that Mr. Marcos' drugs were obtained as a result of the ongoing care, and because of the undermined policy by the state's interpretation, I think that this court should affirm the lower court's ruling. I will retire in support of additional questions. I don't think so. Thank you, Mr. Marcos. Mr. Nicolosi, any rebuttal? Thank you, Your Honors. I actually don't have any further comments, but I would be happy to answer any questions if there are any. I had one, but if you don't have any comments, I won't ask any questions. We're even. Thank you. Mr. Lemke, you did a very nice job. It's nice to see your face instead of your name on the briefs, and welcome to the Illinois State Bar. Thank you both for your argument today. The road to this matter under advisement that bans you with a written disposition.